905 So.2d 948 (2005)
Mary BRILL, Appellant,
v.
Bruce BRILL, Appellee.
Nos. 4D03-882, 4D03-1391, 4D03-4115.
District Court of Appeal of Florida, Fourth District.
June 22, 2005.
*950 Mary Brill, Coral Springs, pro se.
No brief filed on behalf of appellee.

ON MOTION FOR REHEARING
WARNER, J.
We deny the motion for rehearing, withdraw our previously issued opinion and substitute the following in its place.
Mary Brill appeals three postjudgment orders enforcing the provision of a final judgment that directed the marital home be sold when the youngest child reached majority. She contends the trial court entered the first two orders without notice and without full review and entered the third order, which is an order of contempt based upon the previous orders, without considering her objection. We affirm all three orders.
Mary and Bruce Brill's marriage dissolved in 1994. In the final judgment the parties were declared tenants in common as to the marital home, with Bruce's interest in the home valued at $19,750 to balance *951 the value of the business awarded to him. Bruce was to receive his interest upon sale of the residence. Mary received exclusive possession of the home until the youngest child reached majority, and she was responsible for all expenses of the home. The final judgment directed that the home be sold once the youngest child attained majority.[1] In addition to the equitable distribution, Mary was awarded alimony and child support. Mary filed an appeal but then voluntarily dismissed it.
Soon after final judgment was entered, Mary filed a motion for contempt because Bruce fell behind on his alimony and child support payments. Mary was not represented by an attorney at this point. In connection with several other motions for contempt, she was later represented by the attorney assigned through the Support Enforcement Division. The record is replete with motions for contempt and hearings before a general master. Bruce was held in contempt several times, and purge provisions were set. He paid the purge provisions when writs of bodily attachment were issued. Since 1999, an arrearage in excess of $20,000 has existed. Bruce would fall slightly behind on his current obligations but bring them current when another motion for contempt was filed. The $20,000 arrearages have remained.
In April 2002, Mary filed a motion to compel Bruce to pay the arrearages in full and to sign documents permitting her to obtain a loan to repair the home's roof. After a hearing on the matter, the court entered an order finding the alimony arrearages were $22,296.96. Although in her motion she had asked that this amount be reduced to a judgment, she requested the court defer entry of a judgment, which the trial court granted.
As to the roof repair, the court refused to compel Bruce to sign the documents presented by Mary because the loan she sought to obtain required her to remain in the home for at least five years. Because the parties' youngest child would reach majority in six months, this would prevent Bruce from obtaining his interest in the home for a prolonged period of time. Bruce offered to waive his $19,750 interest in the home and transfer his interest to Mary for application to the alimony arrears, which would then be reduced to $1,768.46. Mary apparently refused this offer.
Mary continued to press for payment of the alimony arrearages through contempt proceedings and filed several motions in this regard in the fall of 2002, as well as a request to extend child support until the youngest child graduated from high school. She also filed a motion for attorney's fees and an objection to a hearing held on November 4, 2002. In December of 2002, Bruce filed a "Motion to Enforce Final Judgment" in which he alleged that the youngest child had attained majority and, by the terms of the final judgment of dissolution, the home was to be sold. Bruce noted that he needed his share of funds generated from the sale of the house to satisfy the alimony arrearages that Mary was demanding. He requested that the court order Mary to sign a listing agreement to sell the home.
For her motions, Mary filed notices of hearing for February 14, 2003. In the file is a notice of hearing for her "Second Verified Motion for Attorney Fees To Be Paid by Petitioner Bruce Brill" and a notice for her "Emergency Verified Objection to Hearing Held November 4, 2002 and For The Court To Rule on Motions Presented." There is no transcript of the *952 February hearing. However, the order recites that Mary's motions, including the contempt motion, and Bruce's motion for enforcement of the final judgment were heard. The court awarded some fees to Mary, ordered the marital residence be listed for sale, and determined the child support issue was moot. Thus, it appears that the court did not rule on the contempt motion. Mary appealed that order.
Meanwhile, Bruce filed a motion for the court to appoint a real estate broker because Mary refused to sign any listing agreement for the sale of the home. This was noticed for hearing on March 12, 2003. Mary did not appear at the hearing, claiming in a later filing that she thought the hearing was cancelled based upon a conversation with the judge's judicial assistant. The court entered an order appointing a real estate broker. The order also stated that upon sale of the property, net proceeds would be held in escrow pending further order of the court. Mary appealed this order too. When the appointed broker failed to obtain cooperation from Mary in showing the house, Bruce filed a motion for contempt. The court declined to find Mary in contempt but ordered her to cooperate in the sale of the house. This order was also appealed, but it was dismissed by this court.
Bruce again filed a motion to hold Mary in contempt for failure to cooperate in the sale of the home, alleging that he needed the proceeds to satisfy his alimony arrearages. The matter was referred to a general master. There is no court reporter's transcript of the proceedings. The master recommended that Mary be held in contempt and stated that Mary admitted that she disobeyed the court order. The general master recommended that a lock box be put on the residence, with the broker and Mary each having a key. If Mary did not cooperate with this, the master suggested the broker be authorized to hire a locksmith to change the locks on the house, keep a key to the lock, and provide Mary with a key.
Mary filed objections to this order. She contended that the orders of which she was found in contempt were entered without notice and have been appealed, and the master failed to consider her evidence of other assets owned by Bruce. Mary also complained of the court's consistent refusal to enforce the final judgment with respect to alimony arrearages. The trial court held a hearing on the master's report and objections, overruled the objections, and ratified the master's recommendations. This is the third order Mary appeals.
Mary argues that the February 14, 2003 order requiring her to sign a listing agreement and, thus, enforcing the sale provision of the final judgment of dissolution was entered without notice and an opportunity to be heard. She also says that the court refused to consider evidence of Bruce's ability to pay the alimony arrearages at the hearing. Both claims must fail. First, Mary's due process rights were not violated when the court heard Bruce's motion without notice because the motion was one to enforce judgment, thus the issues it concerned had already been adjudicated. Second, Mary did not present a sufficient record from which it can be determined that the court refused to consider evidence regarding Bruce's ability to pay the arrearages but, even if the court did, it was not an abuse of discretion as to the consideration of the motion to enforce the final judgment.
It is generally a due process violation for a trial court to determine matters not noticed for hearing. See Mizrahi v. Mizrahi, 867 So.2d 1211 (Fla. 3d DCA 2004) (finding trial court denied father's due process rights when it modified travel restriction contained in order during hearing *953 on father's motion to hold mother in contempt); Fuchs v. Fuchs, 840 So.2d 449 (Fla. 4th DCA 2003) (finding trial court erred in ruling on matters concerning child custody and child support during hearing noticed for husband's motion for temporary financial relief); Fickle v. Adkins, 394 So.2d 461 (Fla. 3d DCA 1981) (finding court violated appellant's due process rights when it disposed of all pending matters, including matters that were not noticed for hearing). There are circumstances, however, when lack of notice does not violate due process. In United Presidential Life Insurance Co. v. King, 361 So.2d 710 (Fla.1978), the supreme court determined that there is a due process distinction between prejudgment and postjudgment garnishment being conducted prior to a hearing. It determined that "[p]ostjudgment garnishment does not involve the freezing of debtor assets pending adjudication as to the validity of the underlying debt. Instead, it merely provides a procedure for the enforcement of the judgment against those assets." 361 So.2d at 713. Therefore, the court found that due process does not require "prior notice to a judgment debtor and a hearing before a writ of garnishment." Id.
Here, the record demonstrates Mary filed a notice of hearing on her motion for attorney's fees. Bruce then filed a motion to enforce the final judgment of dissolution but never noticed this motion for hearing. While Mary claims this was a violation of her right to due process, her situation is more analogous to the one in King. As the motion heard without notice was a motion to enforce the terms of the previously entered judgment, it was merely a procedure for enforcing Bruce's previously adjudicated rights. Because no actual matters were being adjudicated on Bruce's motion to enforce judgment at the hearing, it was not a violation of due process for the court to hear Bruce's motion. Moreover, the order simply required Mary to sign an agreement listing the home for sale, and that order was never enforced.
Mary also argues that the trial court erred in refusing to consider the evidence she presented at the hearing. Instead of providing a transcript of the hearing, Mary included in the record an affidavit of her brother who was present at the hearing. He avers, "Mary presented Judge Cocalis with evidence including pictures as well as legal verifiable documentation of assets recently purchased by Bruce Brill. The purchases include a brand new Grady White boat worth approximately $130,000.00, a luxury truck and a town-house to name a few of the assets. The Judge looked at this evidence and handed them back to Mary." Mary suggests that the evidence goes to Bruce's ability to pay the arrearages. The record is not sufficient for the panel to determine what evidence was proffered. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979). Nor has Mary attempted to reconstruct the record pursuant to Florida Rule of Appellate Procedure 9.200(b)(4). Therefore, the record on appeal is insufficient.
However, even if we assume that Mary tried to present evidence of Bruce's other assets, we conclude that Mary's right to due process was not violated when the court granted the motion to enforce judgment by ordering Mary to sign a listing agreement because the court could conclude that the evidence was irrelevant to that issue. The final judgment provided for sale of the home upon the youngest child attaining majority. Bruce is entitled to his portion of the proceeds for the very purpose of paying off the arrearage amount. Even if he were current in his alimony, Bruce is still entitled to enforce *954 the final judgment to obtain his interest in the marital home.
Even if Mary is correct that Bruce has other assets with which to pay the arrearages, the court can refuse to enforce the arrearages by contempt. "The right of the former wife to arrearages of alimony and child support is vested. While it is within the discretion of the trial court to refrain from holding the former husband in contempt for failure to pay such arrearages, the former wife is entitled to enforcement of the payments by legal process and by such equitable remedies as the trial court may determine to be appropriate or necessary.. . ." Brock v. Hudson, 494 So.2d 285, 286-87 (Fla. 1st DCA 1986). Here, it is apparent that the court is looking to Bruce's share of the proceeds of the sale of the marital home as satisfying most of the arrearages.
As to the second order appointing a broker to sell the property, Mary argues that this order was entered without notice because the motion and notice of hearing were not in the court file prior to the hearing, and she believed no hearing would take place. She does not allege that she did not receive notice of the hearing. The record contains a notice of hearing, stamped by the circuit court on March 5, 2003, setting this motion for hearing on March 12. Mary complains that the court docket dated March 17, 2003 does not reflect this notice of hearing. The notice is reflected in the court docket dated April 15, 2003, with a filing date of March 5. In another pleading in the record, Mary states that what happened was that these documents were misfiled in another case between the two parties. Because she received notice of the hearing, we conclude that her due process claim fails.
Mary also challenges the order holding her in contempt and ordering the use of a lock box on the home to facilitate its sale. In her third argument, she claims the general master's report violated Florida Rule of Civil Procedure 1.490(f) because the master did not prepare a written record of the proceedings. She also argues the trial court erred in "rubber-stamping" the recommendations of the general master during the October 8, 2003 hearing. Mary also fails to demonstrate reversible error on this point of her appeal as the general master was not required to prepare a written record of the proceedings, and she failed to demonstrate the trial court "rubber-stamped" the master's recommendations.
Florida Rule of Civil Procedure 1.490(f) provides that in hearings before a general master "[t]he evidence shall be taken in writing by the magistrate or by some other person under the magistrate's authority in the magistrate's presence and shall be filed with the magistrate's report." Family Law Rule of Procedure 12.490, which is applicable in this family law case, see Fla. Fam. L.R.P. 12.020 (stating that in family law cases, Family Rules of Procedure govern in the event there is a conflict with Civil Rules of Procedure), has not required a written record since 1995. In In re Family Law Rules of Procedure, 663 So.2d 1049, 1052 (Fla.1995), the supreme court amended the rule after determining "that electronically recording the master's proceeding and preserving that recording for future access sufficiently protects a litigant's rights by providing the ability to have the electronic record transcribed to establish an appropriate record for review if exceptions are filed."
Rule 12.490(d)(2) states that "[t]he general magistrate shall take testimony and establish a record which may be by electronic means as provided by Florida Rule of Judicial Administration 2.070(g)(3) or by a court reporter." 12.490(g) provides:

*955 Record. For the purpose of the hearing on exceptions, a record, substantially in conformity with this rule, shall be provided to the court by the party seeking review if necessary for the court's review.
(1) The record shall consist of the court file, including the transcript of the relevant proceedings before the general magistrate and all depositions and evidence presented to the general magistrate.
(2) The transcript of all relevant proceedings, if any, shall be delivered to the judge and provided to all other parties not less than 48 hours before the hearing on exceptions. If less than a full transcript of the proceedings taken before the general magistrate is ordered prepared by the excepting party, that party shall promptly file a notice setting forth the portions of the transcript that have been ordered. The responding parties shall be permitted to designate any additional portions of the transcript necessary to the adjudication of the issues raised in the exceptions or cross-exceptions.
(3) The cost of the original and all copies of the transcript of the proceedings shall be borne initially by the party seeking review, subject to appropriate assessment of suit monies. Should any portion of the transcript be required as a result of a designation filed by the responding party, the party making the designation shall bear the initial cost of the additional transcript.
(Emphasis added).
Mary transcribed the hearing before the general master herself and provided this document to the trial court. Clearly, this is not the type of transcript contemplated by Rule 12.490. Regardless, contrary to her argument, the general master was not required under the rule to provide a written record of the evidence to the trial court.
Mary also argues that the court erred in "rubber-stamping" the report and recommendations of the general master that she be held in contempt. Because Mary filed exceptions to the general master's findings, she was entitled to have the trial court review the entire record. See Anderson v. Anderson, 736 So.2d 49, 50-51 (Fla. 5th DCA 1999) ("It is clear that if one objects to a master's report, the trial court has an obligation not merely to consider the findings and recommendation of the master but also to review the entire file."). However, Mary's failure to provide a transcript of the October 8 hearing at which the trial court denied her exceptions to the master's report prevents us from determining whether the court reviewed the entire file prior to ruling on her exceptions to the master's report. See Prymus v. Prymus, 753 So.2d 742 (Fla. 3d DCA 2000) (affirming trial court's order overruling recommendations of general master where appellant failed to provide court with transcript of the hearing or a proper substitute). While Mary did file her own handwritten notes as to what occurred, these are not an acceptable substitute for a transcript under Rule 9.200(b)(4). As Mary did not provide a transcript of the hearing, it cannot be determined whether the trial court merely "rubber-stamped" the master's report and recommendation. We therefore affirm as to the order of contempt.
Finally, Mary makes a general attack on all of the proceedings in her case suggesting that none of the judges are enforcing her alimony arrearages. The record belies her claim. There are numerous orders for contempt and numerous purge provisions. What Mary still contends is that Bruce has other assets from which this entire amount can be collected, *956 which appears to be what she wants. If that is the case, then she could have obtained a judgment for the arrearages and levied on those assets. Or, as suggested many times, she could have obtained his interest in the marital home as partial satisfaction of his obligation. This would appear to be a better option than selling the home in accordance with the provisions of the final judgment, but Mary has rejected this solution several times.[2]
As stated before, while the court may not refuse to enforce the alimony arrearages, the court may refuse to enforce this matter by contempt. See Brock, 494 So.2d at 286-87. The courts have not denied Mary relief. Mary simply wants the trial court to enforce the judgment in the manner that she desires, and there is no obligation for the court to do that.
Affirmed.
POLEN and HAZOURI, JJ., concur.
NOTES
[1] The record reflects an equity of over $120,000 at the time of the final judgment, and the value of the property has increased substantially since that time.
[2] Mary appears to have a mistaken understanding of the import of such a solution. The trial court awarded her funds to retain an attorney to advise her on this, but she apparently has not sought such advice.